# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| FRASCELLA ENTERPRISES, INC., | : | Bankruptcy No. 06-10322DWS |
| dba Cash Today, | : | |
| | : | |
| Debtor. | : | |
| | : | |
| LAWRENCE TURNER, | : | Adversary No. 06-0101 |
| LINDA DAVIS, | : | |
| DEMRYI HILL, on behalf of themselves | : | |
| and all others similarly situated, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| FRASCELLA ENTERPRISES, INC., | : | |
| dba Cash Today, | : | |
| DAVID W. FRASCELLA, JR., | : | |
| LARRY D. FRASCELLA, | : | |
| | : | |
| Defendants. | : | |

# MEMORANDUM OPINION

**BY:  DIANE WEISS SIGMUND, Chief Bankruptcy Judge**

Before the Court are (1) Defendants' Motion to Dismiss Plaintiffs' Complaint for

Lack of Subject Matter Jurisdiction and to Enforce a Mandatory Agreement to Arbitrate

all Disputes ("Dismissal Motion") and (2) Plaintiffs' Motion to Sever and Remand

("Sever/Remand Motion") (together the "Motions").  The month prior to the filing of this

bankruptcy case, Lawrence Turner, Linda Davis and Demyri Hill, on behalf of themselves

and all others similarly situated, commenced a consumer class action (the "Class Action")

in the Court of Common Pleas of Philadelphia County ("State Court") against Frascella

Enterprises, Inc. d/b/a Cash Today ("Debtor") and its principals David Frascella and

Larry Frascella ("Frascella Brothers").    In bankruptcy, the Debtor utilized its statutory

authority to remove the Class Action from State Court to this Court.  28 U.S.C. § 1452 and

Fed.R.Bankr.P. 9027.  Having done so, it now seeks an Order from this Court dismissing the

removed Class Action so that it may be referred to an arbitrator.  Plaintiffs parry by asking

this Court to remand to the State Court that part of the removed Class Action that seeks relief

against the Frascella Brothers only.

     The underlying issue in both these motions is which court, state or bankruptcy,

will decide the threshold issue of the enforceability of the arbitration clause in the contracts

the consumers signed to secure "pay day" loans from the Debtor.  By removing the Class

Action to this Court, the Debtor seeks to have me decide that issue in favor of arbitration–

but not to have me adjudicate the Class Action.  The Plaintiffs want the State Court to decide

the threshold issue of arbitratability but recognize that their claims against the Debtor are

core proceedings and that option is presently foreclosed against the Debtor.  Instead the

Plaintiffs seek to sever and remand the Class Action as to the Frascella Brothers on the

grounds that this Court has no subject matter jurisdiction over these defendants or

alternatively, on equitable grounds under 28 U.S.C. § 1452(b).  If successful, the threshold

issue of the enforcement of the arbitration clause as to the claims against the Frascella

Brothers would then be decided by the State Court.  Without commenting on the potential

of inconsistent views on this subject which could arise by the dual adjudication, Plaintiffs

rather seek to defer this Court's determination of the Dismissal Motion as premature.

Their respective strategies are based on their common view that each would more likely

obtain a favorable result in the forum it has selected.  For the reasons that follow,

the Motions are denied.[1]


## BACKGROUND

The Class Action seeks redress for certain allegedly usurious short term loans made

to consumers by the Frascella Brothers through the Debtor and another entity that they own

and control.  Because the loans are usually come due on the borrower's next pay day, they

are referred to as "payday loans."  Of relevance to the Dismissal Motion is a provision in

---

[1] These contested matters were taken under advisement on March 30, 2006. As noted, the Plaintiffs have argued that the Dismissal Motion is premature.  They contend that Debtor's initial counsel Obermayer Rebmann Maxwell & Hippel LLP ("Obermayer") possessed such conflicts in this case that substantive motions filed by it such as the Dismissal Motion should not be considered. On April 12, 2006 I denied the application to retain Obermayer, and on April 20, 2005, the Debtor filed an application to employ Maschmeyer Karalis P.C. ("MK") which was subsequently approved. On April 28, 2006, a creditor filed a motion to appoint a Chapter 11 trustee. At the June 21, 2006 hearing on that motion, the parties reported it as settled with the debtor to remain in possession.  On June 29, 2006 MK filed a Chapter 11 plan of reorganization and disclosure statement.  Doc. No. 118 and 119.  Given the foregoing dynamics of the case occurring shortly after the contested matters were joined, I determined to await the outcome of the trustee motion and allow the progress of the reorganization under new counsel before rendering my opinion on these contested matters.  I find now that a bona fide reorganization is in progress, a fact that informs my decision on this court's role in the Class Action. Moreover, I believe the efforts that new counsel has taken since its appointment have cleansed any taint resulting from prior counsel's conflicts.

the standard form loan document (the "Note") that the borrowers sign whereby they agree to submit all claims and disputes to "binding individual (and not class) arbitration by and under the Code of Procedure of the National Arbitration Forum ("NAF") in effect at the time." In addition to this arbitration clause, the Note contains a separate agreement "not to bring, join or participate in class actions." Finally the Note also has a choice of law provision that designates Delaware law as controlling. Exhibit F to Complaint.

The Complaint asserts six counts, only one of which is relevant to this contested matter.[2] Count VI entitled "Declaration of Contractual Unconscionability" challenges the foregoing Note provisions as unconscionable. It alleges that the contracts are essentially adhesion contracts, the borrowers being even more desperate than the average consumer as evidenced by their need for such costly financing and thus lacking any bargaining power to negotiate any material changes to the contract's terms. Complaint ¶¶ 142-143. It alleges that by precluding the class action which is the only economically feasible vehicle to pursue the consumer's claims, Defendants are effectively immunizing themselves from liability. Id. ¶ 145. It further alleges that the designation of Delaware law insulates Defendants from

---

[2] The other counts assert violations of (1) Pennsylvania Usury Law, 41 P.S. § 101 et seq. by reason of the imposition of interest charges on the loans which exceed the usury law limit of 6% (Count I); (2) Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 et seq. by reason of the violation of the Pennsylvania usury law, the Pennsylvania Fair Credit Extension Uniformity Act, and the Pennsylvania Check Cashing Licensing Act; being unlicensed; and engaging in various unfair and deceptive acts, none of which relate to the arbitration clause or form of contract utilized (Count II); (3) Pennsylvania Fair Credit Extension Uniformity Act, 73 P.S. §2270.1 et seq. by reason of attempting to charge unlawful interest (Count III); Pennsylvania Check Cashing Licensing Act, 63 P.S. § 2301 et seq. by reason of cashing or advancing money on a post-dated check (Count IV); (4) Credit Services Act, 73 P.S. 2181 et seq. by reason of making false or misleading statements as a loan broker and as a credit services organization (Count V).

accountability to Pennsylvania consumers under Pennsylvania law.  <u>Id.</u> ¶ 146.  Finally, and most significantly for these purposes, they allege that it would be unfair to require consumers to arbitrate their claims against Defendants with NAF as the exclusive forum because (a) its economic dependancy on its corporate clients renders it not nuetral; (b) NAF does not allow a litigant to have input on the selection of the arbitrator; (c) NAF arbitrators (as opposed to other arbitrators) tend to be creditor lawyers, not nuetrals; (d) NAF shifts costs to a losing consumer in violation of Pennsylvania law; (e) NAF rules limit allowable discovery to an amount "commensurate with the value of the claim" effectively allowing very little discovery in these matters; (f) NAF rules prohibit class actions; (g) NAF rules prohibit joinder of claims without creditor consent effectively allowing the creditor to veto the joinder of multiple consumers in a non-class action.  <u>Id.</u> ¶ 147.  Plaintiffs conclude that these provisions are procedurally and substantively unconscionable and should be declared unenforceable as violative of Pennsylvania public policy.  <u>Id.</u> ¶ 148.

[rest of page intentionally left blank]

**DISCUSSION**

A.  Dikismissal Motion[3]

I.

A motion to enforce an arbitration agreement is typically reviewed under the standard

for summary judgment found in Federal Rule Civil Procedure 56(c).  Par-Knit Mills, Inc. v.

Stockbridge Fabrics Co., 636 F.2d 51, 54 n.9 (3d Cir. 1980).  The court must consider all the

_____

[3] As an initial matter, I reject the Plaintiffs' position that I defer decision on this Motion because (1) stay relief has not been sought by the Debtor and (2) Plaintiffs have filed the Sever/Remand Motion which would allow them to bring the question of the enforceability of the arbitration agreement as to the Frascella Brothers before a state court before this Court could opine on the same issue as to the Debtor.  As I find for the reasons set forth below that I have subject matter jurisdiction over the entire controversy, deferral for these ends is unwarranted.  My decision on both these contested matters ensures that the judgment of one judge, albeit me, shall prevent inconsistent results from arising at least with respect to this arbitration agreement.

Plaintiffs are correct that the automatic stay applies notwithstanding that it is the Debtor that seeks relief in a proceeding which was initiated against it.  Assoc. of St. Croix Condominium Owners v. St. Croix Hotel Corp., 682 F.2d 446 (3d Cir. 1982) (debtor and opponent needed stay relief to go forward with appeal of action brought against debtor).  However, I find no authority for the proposition that the stay precludes this court from determining where the Class Action will proceed- a judicial or arbitral forum.  The Debtor did not need stay relief to move the Class Action from state court to the bankruptcy court.  I see no reason it would need relief from stay to move the Class Action from bankruptcy court to arbitration.  A ruling on the Dismissal Motion does not interfere with the broad purposes served by the automatic stay.  Thus, proceeding as I do is not contrary to the admonition of the Third Circuit Court of Appeals "to halt as soon as the scope of the parties' submissions support an award that could diminish [Debtor's] estate.  Acands Inc. v. Travelers Casualty and Surety Co., 435 F.3d 252, 260 (3d Cir. 2006).  Nothing about a declaratory ruling on this issue impacts the amount of the Debtor's estate.  In any event, whether the stay technically applies to the Debtor or relief therefrom is requested, it is clear that the claims framed by the Class Action must be liquidated if the Debtor is to reorganize.  In short, relief will be readily granted if and when required.

Finally, as noted above, the conflicts that I found that the Obermayer firm brought to this case have been cleansed by the appointment of new counsel which still presses the motion on behalf of the debtor-in possession.

evidence presented by the party opposing arbitration and construe all reasonable inferences in that party's favor. <u>Ostroff v. Alterra Healthcare Corp.</u>, ____F.Supp.____, 2006 WL 1544390, at *2 (E.D. Pa. June 7, 2006). If the court concludes that there is a question of fact as to whether the arbitration agreement is enforceable, an evidentiary hearing would be required. In this case, the motion to enforce the arbitration agreement is presented in the form of a motion to dismiss the Complaint. An answer to the Complaint has not been filed nor have the parties presented affidavits to support their factual contentions. As such, it appears appropriate to use a Rule 12(b)(6) standard in adjudicating this contested matter.

The Third Circuit Court of Appeals has stated that in considering a Fed.R.Civ.P. 12(b)(6) motion to dismiss, a court must accept all allegations in the complaint, and all reasonable inferences that can be drawn therefrom, as true and view them in the light most favorable to the non-moving party. <u>See</u> <u>Rocks v. City of Philadelphia</u>, 868 F.2d 644, 645 (3rd Cir. 1989) (citations omitted); <u>Angelastro v. Prudential-Bache Securities, Inc.</u>, 764 F.2d 939, 944 (3rd Cir. 1985), <u>cert.</u> <u>denied</u>, 474 U.S. 935 (1985). A complaint must not be dismissed for failing to state a claim unless it appears beyond reasonable doubt that plaintiffs can prove no set of facts in support of their claim that would entitle them to relief. <u>See</u> <u>City of Philadelphia v. Lead Industries Ass'n, Inc.</u>, 994 F.2d 112, 118 (3d Cir. 1993) (citing <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102 (1957)).

## II.

Notwithstanding the parties' jurisdictional preferences, there are some settled principles concerning the enforcement of arbitration provisions in consumer contracts, whether the court be federal or state. First, it is clear that notwithstanding the well accepted

notion that the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-10, requires the enforcement of written agreements to arbitrate disputes by federal courts, <u>Mintze v. American General Financial Services, Inc. (In re Mintze)</u>, 434 F.3d 222, 229 (3d Cir. 2006),[4] generally applicable contract defenses, such as fraud, duress or unconscionability, may be applied to invalidate an arbitration agreement. <u>Doctor's Associates, Inc. v. Casarotti</u>, 517 U.S. 681, 687 (1996). A court cannot direct parties to arbitration unless the arbitration agreement is valid. <u>Ostroff,</u>____F.Supp.____, 2006 WL 1544390, at *3. The power of a court to declare an arbitration provision unenforceable by reason of the same type of defense that would be applicable to the enforcement of any contract does not contradict the FAA or its policy underpinnings which strongly favor arbitration. <u>Id.</u>

Most recently in <u>Buckeye Check Cashing, Inc. v. Cardegna</u>, ____ U.S. ____, 126 S.Ct. 1204 ( Feb. 21, 2006), the United States Supreme Court revisted the principles it had enunciated in <u>Prima Paint Corp. v. Flood & Conklin Mfg</u>., 388 U.S. 395, 87 S.Ct. 1801 (1967) and <u>Southland Corp. v. Keating</u>, 465 U.S. 1, 104 S.Ct. 852 (1984). It distinguished the challenges to an arbitration agreement as either (1) specifically to the validity of the

---

[4] The FAA has established a strong policy in favor of arbitration so that enforcement of an arbitration agreement can be overridden only by establishing Congressional intent to create an exception. In <u>Mintze,</u> the Third Circuit held that no such intent could be discerned in the statutory text or legislative intent of the Bankruptcy Code. Accordingly, the bankruptcy court had no discretion to refuse enforcement of arbitration where the statutory rights at issue (federal and state consumer protection laws) were not created by the Bankruptcy Code. The arbitration did not conflict with its purposes. Debtor cites <u>Mintze</u> to argue that I have no discretion not to enforce arbitration in this case. I agree with Plaintiffs that <u>Mintze</u> is not relevant to the issue before me which involves a challenge to the making of the agreement. If, as Plaintiffs contend, the agreement is not valid as a matter of state law, there is nothing to enforce.

agreement to arbitrate or (2) to the contract as a whole either on a ground that directly affects

the entire agreement or on the ground that the illegality of one of the contract's provisions

renders the entire contract invalid.  <u>Prima Paint</u>  addressed the question of who – court or

arbitrator– decides these two types of challenges. Only the former can be adjudicated by the

federal court.  <u>Southland</u> held that the FAA created a body of federal substantive law which

was applicable in state and federal court.   Together they establish three propositions:

> First, as a matter of federal arbitration law, an arbitration provision is severable
> from the remainder of the contract. Second, unless the challenge is to the
> arbitration clause itself, the issues of the contract's validity is considered by
> the arbitrator in the first instance.  Third, this arbitration law applies in state as
> well as federal courts.

<u>Id.</u> at 1209.  <u>Buckeye</u>  ratified those principles.[5]

    Plaintiffs assert that their challenge does address the arbitration clause.  I agree.

While Counts I through V address the validity of the contract as a whole, Count VI expressly

challenges the arbitration clause itself.  In particular, Plaintiffs contend that the arbitration

agreement is a contract of adhesion between a powerless consumer with dire financial needs

and a lender that has made its advances conditioned on use of a forum whose fact finders are

not neutral, which prohibits class actions absolutely and disallows consolidated cases unless

creditor consent is obtained and which restricts use of discovery to the amount of the claim.

---

[5]  <u>Buckeye</u> involved an arbitration provision in a check cashing agreement which the
consumer challenged in state court based on violations of usury and other state laws.  The Florida
Supreme Court had reasoned that enforcing the arbitration agreement in a contract challenged as
unlawful would violate state public policy and contract law.  The Supreme Court reversed relying
on and affirming its prior holding that § 2 of the FAA applied without regard to whether the forum
was federal or state.

Arguing that the mandatory use of this process is procedurally and substantively unconscionable, Plaintiffs contend that the provision should not be enforced.

III.

There is a body of federal and state decisional law on the enforceability of arbitration agreements challenged as unconscionable because of the specific features in those agreements. As noted, the parties view the federal decisional law to be more pro-arbitration. This conclusion emanates in part from the conflict in two cases that considered the enforceability of an arbitration agreement that provided the consumer with less access to a court than the creditor. In Harris v. Greentree Financial Corp., 183 F.3d 173 (3d Cir. 1999), the Third Circuit Court of Appeals reversed a trial court's determination that lack of mutuality to an arbitration agreement rendered the clause unconscionable and therefore unenforceable. In Lytle v. Citifinancial Service, Inc., 810 A.2d 643 (Pa. Super. 2002), the Pennsylvania Superior Court stated that Pennsylvania law on the enforceability of agreements to arbitrate is in accord with federal law,[6] both of which require enforcement of arbitration provisions as written subject to being set aside only for generally recognized contract defenses such as duress, illegality, fraud and unconscionability. However, unlike the Harris Court, it refused to conclude that the lack of mutuality in the remedies provided under the arbitration agreement could not, with the proper record, be cause to find the

---

[6] Finding no appreciable difference between Pennsylvania law and the Federal Arbitration Act ("FAA") on the enforceability of arbitration agreements, the state court assumed, for purposes of the appeal, that the contract affected interstate commerce and the FAA controlled.

agreement unconscionable and therefore unenforceable.   Notably in addition to the

reservation of the right of access to courts for the creditor, the arbitration clause also

contained a prohibition on the use of class actions and certain features relating to costs that

were challenged as unfair.   Vacating the order which dismissed the complaint on the basis

of the arbitration clause, the appellate court remanded for further hearing, making clear that

with a proper record proving that the arbitration clause was unconscionable, it would not be

enforced.[7]

Neither the Pennsylvania Supreme Court nor the Third Circuit Court of Appeals have

addressed an enforcement challenge to an arbitration agreement possessing the precise

characteristics of the one *sub judice*.   I turn to that agreement now.

## IV.

Plaintiffs contend that the arbitration agreement is a contract of adhesion.

"An adhesion contract is defined as a 'standard form contract prepared by one party, to be

signed by the party in the weaker position. [usually] a consumer, who has little choice about

the terms.'"   Lytle, 810 A.2d at 658 (quoting Hueglin v. Mifflin Construction Co., 796 A.2d

---

[7] In Salley v. Option One Mortgage, 2005 WL 3724871 (3d Cir. Oct. 20, 2005), the Third
Circuit recognized that Lytle conflicted with its views in Harris and that the lower federal courts
were split as to whether Harris or Lytle states the law of Pennsylvania. Noting these conflicting
decisions and viewing the question of law to be one of first impression and of such substantial public
importance as to require prompt and definitive resolution by the Pennsylvania Supreme Court, the
Circuit Court petitioned for certification to the Pennsylvania Supreme Court pursuant to 210 Pa.
Code § 63.10 (2005) on the issue of whether an arbitration agreement which reserves the right of
access to a judicial forum for creditor remedies, while requiring the adjudication of other claims in
an arbitral forum is substantively unconscionable.  Not certified for review was the issue of whether
the prohibition of use of the class action vehicle is likewise substantively unconscionable.  It does
not appear that the Pennsylvania high court has rendered its decision yet.

350, 357 (Pa. Super. 2002) (quoting Black's Law Dictionary (7th ed. 1999)).  The arbitration agreement is contained in the three page printed form Note.  Exhibit F to Complaint. The form agreement was required to be executed upon seeking loans or loan renewals. Complaint ¶ 84.  Plaintiffs assert that pay day loans are provided to consumers who have no other financing options.  The allegations of the Complaint support that contention.  See, e.g., Complaint ¶ 70 (plaintiff Turner had no option but to renew the loan), ¶ 77 (plaintiff Davis could not repay and encouraged to rollover and execute another note), ¶¶ 84, 87, (plaintiff Hill did not have enough money to pay the loan and her living expenses so took out another loan).  It would be counterintuitive for a consumer to borrow at the high interest rates imposed by the pay day lender for a loan (alleged to be 400%) that must be repaid within days or weeks if another choice existed. Plaintiffs have sufficiently pled that execution of the Note was required for the financially strapped Davis, Turner and Hill to receive credit from which it is reasonable to infer that the contracts are not negotiated and the waiver of the judicial forum is simply a part of the cost of getting the much needed financing.

However, the fact that a contract is one of adhesion does not mean that it will not be enforced.  Its terms must be analyzed to determine whether the provisions are unconscionable, i.e., its terms unreasonably favor the drafter (substantive unconscionability) and there is no meaningful choice on the part of the other party regarding acceptance of the provision (procedural unconscionability).  Lytle, 810 A.2d at 858.  For the reasons that I have concluded that Plaintiffs have sufficiently pled the formation of a contract of adhesion, I believe they have likewise sufficiently pled procedural unconscionability.  The more

-12-

difficult issue is substantive unconscionability.  This is the area where the perceived disparate

approaches in the state and federal fora create uncertainty for the trial judge.

In Johnson v. West Suburban Bank, 225 F.3d 366 (3d Cir. 2000), the Third Circuit left

open the possibility that an arbitration agreement could be substantively unconscionable.

The inquiry is whether notwithstanding the waived right to a judicial forum, the consumer

may vindicate the rights the applicable consumer statute(s) sets to protect through the arbitral

forum.  Id. at 378.  A negative response would preclude enforcement of the agreement.

Turning to the aspects of the arbitration agreement which Plaintiffs aver they executed, I find

that at this stage of the litigation where I must accept all allegations of the Complaint as true

and draw all inferences therefrom to Plaintiffs' favor, I cannot conclude as a matter of law

that the arbitration agreement is enforceable.  Admittedly Plaintiffs have to overcome a body

of law that strongly favors arbitration, and thus they will be put to their proof to support the

allegations that they have made.  However, as discussed below, I do not find that there are

no facts that could be elicited that would establish the substantive unconscionability of the

arbitration agreement.

Plaintiffs complain that NAF, the designated arbitration firm is not neutral by reason

of the arbitrators it retains and the rules it employs.[8]  Plaintiffs allege that they have no input

on the selection of the arbitrator and the arbitrator are creditor lawyers who are therefore

not impartial.  While not one of Plaintiffs' stronger contentions, Plaintiffs will have the

opportunity to support these charges with actual evidence of bias to the extent they can.

---

[8] As the rules were not made part of this record, I make no finding that they do or do not
contain the restrictions complained of by Plaintiffs.

In <u>Gilmer v. Interstate/Johnson Lane Corp.</u>, 500 U.S. 20, 111 S.Ct. 1647 (1991),[9] the United

States Supreme Court rejected a similar contention that the arbitration panel was biased,

refusing to "indulge in the presumption that the parties and the arbitral body conducting a

proceeding will be unable or unwilling to retain competent, conscientious and impartial

arbitrators." <u>Gilmer</u>, 500 U.S. at 30 (quoting <u>Mitsubishi Motors Corp. v. Soler Chrysler-

Plymouth, Inc</u>. 473 U.S. 614, 634, 105 S.Ct. 1917 (1987).  Mere speculation that the

composition of the arbitration panel will effect the case's outcome to Plaintiffs' disadvantage

will be likewise soundly rejected.[10]

Plaintiffs allege that NAF's rule that shift costs to a losing consumer is contrary

to Pennsylvania law. While this contention is not fleshed out, presumably it is pled

to demonstrate that the arbitral forum diminishes rights that they would enjoy in a

judicial forum.  In <u>Johnson</u>, the arbitration agreement was not found to be substantively

unconscionable because the consumers retained all of their rights under TILA, including

injunctive relief and attorneys' fees.  The Third Circuit distinguished cases where the court

found the arbitration clause to raise a serious concern with respect to filing fees, arbitration

costs and other arbitration expenses that could curtail or bar access to the arbitral forum.

225 F.3d at 374.  Thus, I cannot rule out the possibility that Plaintiffs could prove facts in

support of this example of the agreement's unconscionability.  However, Plaintiffs are

---

[9] <u>Gilmer</u> construes rights under the Age Discrimination in Employment Act, 29 U.S.C. §621 et seq.

[10] Notably at least one court has found no persuasive evidence that NAF is anything but nuetral and efficient. <u>Lloyd v. MBNA America Bank N.A.</u>, 2001 WL 194300, at *3 (D.Del. 2001).

cautioned that speculation about the risk of prohibitive costs will not justify the invalidation of the arbitration agreement. Greentree Financial Corp. v. Randolph, 831 U.S. 79, 90-91, 121 S.Ct. 513, 522 (2000).

Plaintiffs allege that the NAF rule that fixes the amount of discovery by the size of the claim is unfair where the dollar value of the individual claims is small. In Gilmer, the Supreme Court held that discovery limitations do not necessarily render an arbitration agreement invalid. 500 U.S. at 31, 111 S.Ct. at 1654-55. However, the Court left open the possibility of a contrary ruling upon a showing that the limited discovery was insufficient to provide the plaintiff with a fair opportunity to present its claims. Id. Relying thereon, the district court in Ostroff found an arbitration agreement in a residency agreement procedurally and substantively unconscionable in imposing both discovery restrictions and reserving unequal access to the courts to the parties.[11] The court found that the arbitration provisions only allowed depositions of expert witnesses and concluded that absent the opportunity to depose fact witnesses, the plaintiff would have a more difficult time proving numerous allegations in the complaint. 2006 WL 1544390, at *6. In short, it is not the quantum of discovery but the impact that its limitation has on the party's ability to prove its case. Plaintiffs have pled a limitation on discovery. I cannot at this juncture conclude that there is no set of facts that would allow them to demonstrate that such limitation impairs their ability to vindicate their rights under the consumer laws pled.

---

[11] The Court recognized it was bound by Harris but distinguished the facts of Ostroff where both the access problem and discovery restrictions were present in a contract of adhesion. 2006 WL 1544390, at *8.

Finally Plaintiffs complain that the arbitration agreement prohibits class actions and the NAF rules only allow joinder of multiple claims with the other party's consent. They speculate that it would not be forthcoming.  In <u>Johnson</u> the Third Circuit held that claims under the Truth in Lending Act ("TILA") and the Electronic Funds Transfer Act ("EFTA") can be referred to arbitration even though such arbitration clauses may preclude use of the class action procedure to remedy the alleged injury.  The party opposing arbitration argued that there was an inherent conflict between arbitration and the statutory purposes of TILA and EFTA, a proposition that was soundly rejected by the appellate court. Applying the United States Supreme Court' <u>Gilmer</u> decision in to TILA claims, the Court held that "even if the statute implied a right to proceed as a class, the right was waivable so long as the rights that the statute was designed to protect may be vindicated by other means." 225 F.3d at 377.  Comparing the case to cases where it was demonstrated that arbitrators' costs and other arbitration expenses may curtail or bar plaintiff's access to the arbitral forum, the Court noted that Johnson did not argue that the arbitral forum was inadequate to afford him any relief he could secure in a judicial proceeding. Indeed the Court surmised that costs may be less in arbitration and because attorneys' fees are recoverable under TILA, arbitrators had the power to provide the same relief as the courts.  Nonetheless, the Court observed that "even where arbitration clauses are included in agreements, they may be set aside if they are fraudulently induced **or are in some way unconscionable**."  <u>Id.</u> at 378 n.5. (emphasis added).[12]  Thus, while the Circuit Court has rejected a challenge to the enforcement of

_____

[12]  The claim of unconscionability was rejected in <u>Johnson</u>.

-16-

arbitration based on the loss of the class action vehicle, I cannot hold that as a matter of law the issue is foreclosed.[13]

For the foregoing reasons, the Complaint will not be dismissed, and I will not enter an order enforcing the arbitration agreement.

## B.  Sever/Remand Motion

This Court has the authority to sever claims against any party to an adversary proceeding "on such terms as are just."  Fed.R.Bankr.P. 7021 (incorporating Fed.R.Civ.P. 21.)  Plaintiffs contend that severance is warranted in this case, and remand of the severed claims to the State Court pursuant to 28 U.S.C. § 1447(c) or § 1452(b) should follow.  The Debtor opposes severance and remand, arguing that the claims are "related to" identical claims against the Debtor, thus conferring subject matter jurisdiction in this Court which I should retain in order to avoid prejudice to the Debtor from potentially inconsistent rulings on core issues and costly duplication of effort from dual proceedings.[14]

### i.

The Debtor's position is premised on the assumption that I have subject matter

---

[13]  Compare KristiDelta Funding Corp. v. Harris, 396 F.Supp. 512 (D. N.J. 2004) (rejecting class action prohibition as unconscionable in arbitrating claims under the New Jersey Consumer Fraud Act with Thibodeau v. Comcast, 200 WL 416863 (Pa. Common Pl. 2006)(preliminary objection to class action based on customer agreements which included a mandatory bar against this procedure denied).  See also Kristian v. Comcast Corp, 446 F.3d 25 (1st Cir. 2006)(bar of class action in antitrust context prevented vindication of statutory rights; arbitration agreement enforced with invalid provision severed).

[14]  Debtor also argues that since I must refer all of the Plaintiffs' claims to arbitration, there is nothing to sever and remand.  I find that position puts the cart before the horse.  Before I will address the enforceability of the arbitration clause as to the non-debtors, I must determine whether I or the state court should be adjudicating their rights.

jurisdiction to adjudicate claims against the non-debtors absent which severance and remand would be required.  While the parties appear to agree that the Plaintiffs' claims against the Debtor are core, 28 U.S.C. § 157(b)(2), Plaintiffs contend that their claims against the Frascella Brothers are not encompassed within the "related to" jurisdiction of the bankrutcy court and thus there is no bankruptcy jurisdiction as to the non-debtors.

The parameters of "related to" jurisdiction have been explored in a series of Third Circuit Court of Appeals decisions relied upon by the parties.  In Pacor v. Higgins, 743 F.2d 984 (3d Cir. 1984), In re Federal Mogul, 300 F.3d 368 (3d Cir. 2002) and In re Combustion Engineering, Inc., 391 F.3d 190 (3d Cir. 2004), the Court applied its oft stated rule that "a proceeding is related to a bankruptcy case if the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy" to suits against third parties who were jointly and severally liable with the debtor.  Pacor, 743 F.2d at 994. Finding that related jurisdiction is not unlimited, the Court held that joint and several liability alone is not sufficient to confer jurisdiction.  Rather unless a dispute between non-debtors by itself creates the logical possibility that the debtor's estate will be affected, there is no related to jurisdiction.

The Debtor relies on the Frascella Brothers' indemnification rights to support its claim of "relatedness."  It argues that  to the extent the Frascella Brothers are successful on the merits of the Class Action, they are entitled to statutory indemnification which would conceivably affect the Debtor's estate.  Specifically, if successful, they are entitled by reason of 15 Pa.C.S.A. § 1743 to indemnification from the Debtor for the litigation

-18-

expenses they have incurred.[15]

Whether an indemnification agreement is sufficient to create subject matter jurisdiction was the subject of the foregoing Third Circuit decisions. According to the Court, the relevant question on determining relatedness is whether the allegedly related lawsuit would affect the bankruptcy proceeding without the intervention of yet another lawsuit. In both Pacor and Federal Mogul, the indemnification claims that gave rise to the assertion of 'relatedness' had not yet accrued and would require an additional lawsuit before they could have an impact on the bankruptcy case.  However, in Combustion Engineering, 391 F.3d at 225, the Third Circuit distinguished actions involving contractual indemnification claims that give rise to automatic indemnification liability from litigation that is at best a mere precursor to a potential third party claim for indemnification, i.e., Pacor, and found such claims would affect and therefore be related to the bankruptcy proceeding.

Here the Frascella Brothers do not have a contractual right to indemnification, but a statutory right of indemnification.   This indemnification is mandatory and therefore automatic but only when the corporate representative prevails in the litigation.  Satisfaction of the condition to indemnification (i.e., success) should be apparent without the intervention of further litigation.   Since I cannot conclude that another lawsuit would be required before liability would affect debtor's bankruptcy estate, I believe the actions against the Frascellas are related and thus within this Court's jurisdiction.  Their claims would be expenses of administration that enjoy priority under § 502 and would have a direct impact on creditor

---

[15]  The Debtor's by-laws do not provide any indemnification rights.

distributions.

This conclusion is bolstered by the nature of the Class Action.  As <u>Pacor</u> also teaches,
"an action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities,
options or freedom of action (either positively or negatively) and which in any way impacts
upon the handling of the estate."  743 F.2d at 994.  In <u>Combustion Engineering</u>, the Third
Circuit stated that corporate affiliation cannot by itself provide a sufficient basis for
exercising related to jurisdiction.  However, that affiliation is probative of  jurisdiction if
supported by factual findings that a suit against the non-debtors would deplete the estate or
affect its administration. 391 F.3d at 228-29.

The gravaman of the Complaint is that the Frascella Brothers acting through the
Debtor corporation violated various consumer protection statutes.  The claims of unlawful
activity by the Debtor are the same claims of unlawful activity by the Frascella Brothers.
Debtor correctly states that the Complaint often makes no distinction. Where the identity of
interests between the parties is as close as the Complaint states, the possibility of Plaintiffs
using the fruits of a separate State Court proceeding to the Debtor's disadvantage is real.  The
pursuit by Plaintiffs of some theory of corporate accountability for individual judgments
cannot be foreclosed.  The Debtor, through counsel, would need to be actively involved in
the parallel and duplicative State Court action to protect the Debtor's interests when the
precise conduct it is charged with is at issue.  The Debtor cannot rely on the Frascella
Brothers to act in the Debtor's best interests since their interests may conflict.  Additionally,
the plan of reorganization filed by Debtor contemplates contributions of capital to the

reorganized entity by the Frascella Brothers. Plaintiffs' claims against the Frascella Brothers have the potential of impacting confirmation of the plan and thus the administration of the estate. Consolidation of Plaintiffs' claims, both core and non-core, against all defendants in the bankruptcy forum is not only jurisdictionally permissible but the most sensible approach.[16]

ii.

Having concluded that I have jurisdiction to adjudicate the Class Action, I will now turn to the Plaintiffs' request that I sever the claims against the non-debtor defendants and remand same to the State Court. The consequence of that action would be a determination by this Court as to the enforceability of the arbitration clause against the Debtor and a parallel determination by the State Court as to the same question but applied to the litigation of claims against the Frascella Brothers. When expressed in those terms, the appropriate resolution of the request is suggested.

---

[16] As such, this case presents a very different set of facts and jurisdictional conclusion than Pacor, Federal Mogul and Combustion Engineering where the claims against the non-debtors did not share a common ground with the claim against the Debtor. For example, in Combustion Engineering the Third Circuit compared the claims asserted asserted against the non-debtors in Dow Corning, 86 F.3d 482 (6th 1996) with those asserted. In Dow Corning, the liability of all the defendants was based on a single product and each of the co-defendants was involved in using the same material which originated with the debtor to make the same product sold to the same market and incurring the same injuries. "This circumstance created a unity of interest between the debtor and the defendants not present here." Combustion Engineering, 391 F.3d at 231 (quoting Arnold v. Garlock, Inc., 278 F.3d 426, 440 (5th Cir. 2001). The theory of "related to" jurisdiction in Dow Corning was based on the near certainty that Dow Corning would be directly or derivatively liable for any injury resulting from a silicone breast implant because it either manufactured it or contributed key supplies to it. By contrast, the claims asserted against the defendants in Combustion Engineering arise from different products, different asbestos-containing materials which were sold to different markets.

Federal Rule of Civil Procedure 21(incorporated in adversary proceedings by Fed.R.Bankr.P. 7021) authorizes the court to "drop any party on motion or *sua sponte* at any stage of the action and "on such terms as are just." Fed.R.Civ. P. 21.  The decision of whether to sever a party or claim is within the broad discretion of the court.  <u>Freedom Int'l Trucks, Inc. of New Jersey v. Eagle Enterprises, Inc.</u>, 1998 WL 695397, at *1 (E.D. Pa. Oct. 5, 1998).  While designated "misjoinder and non-joinder of parties," it is clear that the rule also applies to dropping a party properly joined in appropriate circumstances.  <u>Id.</u>

According to the court in <u>Cushman Wakefield v. Backos</u>, 129 B.R. 35, 36 (E.D. Pa. 1991), severance is proper unless the party is indispensable to the pending action.  <u>Id.</u> Indispensability has been analyzed in terms of four interests that should determine whether "in equity and good conscience" a court should proceed without a party whose absence from the litigation is compelled by other reasons.  <u>Id.</u> at 36.  Those interests are:

> (1) the plaintiff's interest in having a forum and whether a satisfactory alternative forum exists;
>
> (2) whether the defendant may wish to avoid multiple litigation or inconsistent relief or sole responsibility for the liability he shares with another;
>
> (3) the interest of the outsider whom it would have been desirable to join and the extent to which the judgment may, as a practical matter, impair or impede the absent party's ability to protect his interest; and
>
> (4) the interest of the courts and the public in the complete, consistent and efficient settlement of controversies.

<u>United National Insurance Co v. Equipment Insurance Managers,</u> 1997 WL 241152, at *3 (E.D. Pa. May 6, 1997) (quoting <u>Cushman</u>, 129 B.R. at 36-37.)

The analysis of Judge Rendell in <u>United National Insurance</u> is particularly instructive in this case. In rejecting a request to sever, she recognized that the plaintiff had a satisfactory forum in the bankruptcy court where it could bring all of its claims. As I have held that the claims against the non-debtors are related to the bankruptcy case, I find that the Plaintiffs here can secure complete relief in this court mitigating against severance. <u>Cushman</u> and <u>Freedom International Trucks v. Eagle Enterprises, Inc.</u>, 1998 WL 6953397 (E.D. Pa. Oct. 5, 1998), which granted severance, found otherwise. They also concluded that the automatic stay would stall the prosecution of plaintiff's claims against the non-debtors if they were not severed, in effect leaving it without a forum. However, the automatic stay is not a barrier to relief in this case. To the extent the Debtor's removal and motion to compel arbitration do not represent a consent to relief from stay, I would certainly grant such relief. Debtor has filed a plan of reorganization which requires the liquidation of Plaintiffs' claims. Thus, there is no purpose to be served by maintaining the stay.

Perhaps it is the second factor that most persuasively points to non-severance. The potential for inconsistent relief is precisely why the parties have filed these competing motions. Severance will require two judicial forums to address the same question, <u>i.e.</u>, is the arbitration agreement enforceable? It would be anomalous for it to be enforced against one party and not the other. Moreover, since the complained of conduct is the same with respect to the Debtor and non-debtor defendants, the potential for inconsistent relief on the merits exists if severance is permitted. Finally the additional cost and time to protect Debtor's interests in the State Court would likely impact its reorganization.

In <u>United National Insurance</u>, the Court addressed the last prong of the <u>Cushman</u> test,

<u>i.e.</u>, complete and efficient resolution of the controversies as follows:

> Further, plaintiffs cannot escape the fact that while they desire to prove liability as against the two individual defendants, their business relationship was with EIM. It was EIM that was the entity through which the individuals acted, and EIM might be impaired or impeded by proof at a trial of only its officers.... In the circumstances here, where wrongful conduct by officers and agents of a corporation and the corporation itself are alleged, there is great potential for the interests of EIM to be impaired or impeded if the case were to proceed against the individual defendants. While plaintiffs contend that there can be no collateral estoppel, would plaintiffs not seek to bind the corporation, arguing corporate agency principles and lack of distinction as between the individuals and the corporation if they succeeded against the Weirs? (citation omitted) The facts, and legal relationships flowing from the facts, convince me that EIM will not be able to protect its interests if it is not present as part of this litigation. Further, indemnity as against EIM for costs would appear to follow in fairly routine fashion from a finding of no liability as against the individual defendants. Similarly, the avoidance of multiple litigation and inconsistent relief, as well as the inability to share responsibility warrants that these matters not be severed.

1997 WL 241152, at *4. The Court's findings that the parties and their conduct were related

and presented common questions of fact and law refuted severance.[17] Similarly in this case

claims against the Debtor and Frascella Brothers arise out of Debtor's pay day lending and

check cashing operations and involve the same conduct by all of the defendants, <u>i.e.</u>, making

allegedly usurious loans through adhesion contracts and operating an unlicensed check

cashing business using unfair and deceptive practices. Given the facts and the legal

relationships flowing from these facts, I too conclude that it is essential that the Debtor be

---

[17] Thus, the facts are distinguishable from cases where severance is appropriate given the independent nature of the claims against the parties. <u>E.g.</u>, <u>Cushman,</u> 129 B.R. at 37. (joint obligor on note is primarily liable and can be sued as the sole defendant)

represented in any proceeding where the responsibility for the alleged unlawful conduct is assessed.  As I find that severance in this case would prejudice the Debtor and be contrary to the public interest in complete, consistent and economically efficient judicial proceedings, the Sever/Remand Motion shall be denied.

### C.  Conclusion

The Dismissal Motion and the Sever/Remand Motions are denied.  This Court will retain jurisdiction of this adversary proceeding pending further proceedings.  Defendants will be ordered to file their answer to the Complaint and a preliminary pretrial hearing shall be scheduled.  An Order to that effect shall issue.

_____
            DIANE WEISS SIGMUND
            Chief U.S. Bankruptcy Judge

Dated:   July 17, 2006

# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| FRASCELLA ENTERPRISES, INC., | : | Bankruptcy No. 06-10322DWS |
| dba Cash Today, | : | |
| | : | |
| Debtor. | : | |
| | : | |
| LAWRENCE TURNER, | : | Adversary No. 06-0101 |
| LINDA DAVIS, | : | |
| DEMRYI HILL, on behalf of themselves | : | |
| and all others similarly situated, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| FRASCELLA ENTERPRISES, INC., | : | |
| dba Cash Today, | : | |
| DAVID W. FRASCELLA, JR., | : | |
| LARRY D. FRASCELLA, | : | |
| | : | |
| Defendants. | : | |

## <u>ORDER</u>

**AND NOW**, this 17th day of July 2006, upon consideration of (1) Defendants'

Motion to Dismiss Plaintiffs' Complaint for Lack of Subject Matter Jurisdiction and to

Enforce a Mandatory Agreement to Arbitrate all Disputes ("Dismissal Motion") and

(2) Plaintiffs' Motion to Sever and Remand ("Sever/Remand Motion"), after notice and

hearing and for the reasons set forth in the accompanying Memorandum Opinion;

<u>Adversary No. 06-0101</u>

It is hereby **ORDERED** that:

1.  The Dismissal Motion is **DENIED**;

2.  The Sever/Remand Motion is **DENIED**;

3.  Defendants shall file their Answer to the Complaint by **August 4, 2006**.

4.  A Status Hearing shall be held on **August 14, 2006 at 9:30 a.m.** in the Robert N.C.

Nix, Sr. Federal Courthouse, 2nd floor, 900 Market Street, Courtroom #3, Philadelphia, PA

to determine further proceedings in this adversary case.

_____
         DIANE WEISS SIGMUND
         Chief U.S. Bankruptcy Judge

<u>Copies to:</u>

Alan M. White, Esquire
Irv Acklesberg, Esquire
Community Legal Services, Inc.
3638 North Broad Street
Philadelphia, PA  19140

Edmond M. George, Esquire
OBERMAYER REBMANN MAXELL
& HIPPEL LLP
1900 One Penn Center
1617 J.F.K. Boulevard
Philadelphia, PA 19103

Dave P. Adams, Esquire
Office of the U.S. Trustee
833 Chestnut Street
Suite 500
Philadelphia, PA 19107