# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| FRASCELLA ENTERPRISES, INC., | : | Bankruptcy No. 06-10322DWS |
| d/b/a CashToday, | : | |
| | : | |
| Debtor. | : | |
| | : | |
| LAWRENCE TURNER, | : | Adversary No. 06-0101 |
| LINDA DAVIS and DEMRYI HILL, | : | |
| on behalf of themselves and all others | : | |
| similarly situated, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| FRASCELLA ENTERPRISES, INC., | : | |
| d/b/a CashToday, | : | |
| LARRY D. FRASCELLA, | : | |
| DAVID W. FRASCELLA, JR., and | : | |
| THERESA FRASCELLA, | : | |
| | : | |
| Defendants. | : | |

# OPINION

**BY:  DIANE WEISS SIGMUND, United States Bankruptcy Judge**

Before the Court is the Plaintiffs' Motion to Enforce Settlement (the "Motion").

The facts giving rise to the Motion are contained in the record of this Court's proceedings

and in certain documents that comprise the evidentiary record.  Counsel for Lawrence

Turner, Linda Davis and Demryi Hill on behalf of themselves and all others similarly

situated (the "Plaintiffs" or the "Class") rely on the foregoing record and do not seek an

evidentiary hearing.[1]   For the following reasons, I grant the Motion in part. While the

writings that memorialize the modifications do not constitute a binding agreement because

they have not been signed by all counsel as contractually required, the failure to reach a

resolution on the post-hearing issues does not negate the enforceability of the agreement

reached on August 17, 2007 to which the parties are presently contractually bound.


## BACKGROUND

On January 30, 2006 ("Petition Date") Frascella Enterprises, Inc. d/b/a CashToday

("Debtor"), filed for protection under Chapter 11 of the Bankruptcy Code.[2]   Since that date

its reorganization proceedings have been animated by claims of a consumer class against

it and its principals David and Larry Frascella (the "Brothers") (together Debtor and

---

[1]  At the conclusion of the briefing, I scheduled a further status conference to verify the parties' positions on the necessity of a hearing. Plaintiffs' counsel stated that all relevant facts were undisputed. Defendants disagreed but claimed it was the Plaintiffs' burden to establish the right to enforcement so they saw no need for a hearing either. However, in further briefing that I requested, Plaintiffs stated that if their position was not sustained because I found disputed material facts, they would then seek a hearing.

[2]  I shall take judicial notice of the docket entries in this case. Fed.R.Evid. 201, incorporated in these proceedings by Fed.R.Bankr.P. 9017. See Maritime Elec. Co., Inc. v. United Jersey Bank, 959 F.2d 1194, 1200 n.3 (3d Cir. 1991). While a court may not take judicial notice *sua sponte* of facts contained in the debtor's file that are disputed, In re Augenbaugh, 125 F.2d 887 (3d Cir. 1942), it may take judicial notice of adjudicative facts "not subject to reasonable dispute ... [and] so long as it is not unfair to a party to do so and does not undermine the trial court's factfinding authority." In re Indian Palms Assoc., 61 F.3d 197, 205 (3d Cir. 1995) (*citing* Fed.R.Evid. 201(f) advisory committee note (1972 proposed rules). Moreover, "factual assertions in pleadings, which have not been superceded by amended pleadings, are judicial admissions against the party that made them." Larson v. Gross Bank, 204 B.R. 500, 502 (W.D. Tex. 1996). The Debtor's Amended Disclosure Statement and the briefs in support of the Motion contain the undisputed factual history recited below.

Brothers, the "Defendants").   A class action complaint (the "Turner Action") alleging

violations of various usury and other consumer protection laws in connection with Debtor's

payday lending business pending on the Petition Date in state court was removed to this

Court on February 3, 2006.  A jurisdictional battle then ensued with the Debtor and Brothers

arguing that the arbitration provision in the consumer contracts must be given effect and the

Plaintiffs opposing that consequence as it would deny them a class action vehicle for

asserting their claims.  Notably at the time this dispute raged, the federal and state courts

diverged in their views of the enforceability of arbitration clauses.  In particular, it was

not clear whether the Third Circuit Court of Appeals would embrace decisions of the

Pennsylvania lower courts that held that arbitration clauses that foreclose the use of class

actions were unenforceable as unconscionable adhesion contracts.  Indeed that precise issue

was teed up for resolution here[3] in the first instance when the parties announced a settlement

of the Turner Action.[4]

<u>The Settlement</u>

The settlement is memorialized in a document executed by all parties to the

litigation entitled Agreement to Settle Class Adversary Proceeding dated August 17, 2007

---

[3]  Pending before the Court was the Defendants' Motion to Enforce Arbitration.  Doc.
No. 42. The parties had just concluded their discovery and submitted an agreed upon documentary
record in support of their respective positions.

[4]  While the Defendants dwell at some length on the events leading up to the settlement,
I find those facts irrelevant to the issue before me since, as discussed below, there is no question in
my mind that a settlement was reached.  I do acknowledge that it represented months of negotiation
and was aided by a judicial mediator although ultimately the parties reached closure by themselves.

(the "Settlement Agreement").[5]  Exhibit 5 to Affidavit of Aris J. Karalis ("Karalis Aff.").

The material terms of the Settlement Agreement are:

(1)  The establishment of a settlement fund totaling $1.2 million comprised of (a) four quarterly installments of $150,000 to be paid by the Brothers commencing the later of October 1, 2007, the 10th day after the Order approving the Amended Disclosure Statement or the 10th day after the order certifying the class and preliminarily approving the Settlement and (b) $150,000 to be paid by the Debtor and $450,000 to be paid by the Brothers within ten days of the Trigger Date (i.e., the later of (a) entry of a final order (i) confirming the Plan, (ii) certifying the class and (iii) giving final approval to the Settlement Agreement and (b) the occurrence of the Effective Date of the Plan).  Until all payments are made, the installment payments made shall be held in escrow and the Amended Plan will not go "effective."[6]  If there is a default of the payment obligations, the escrowed payments will be returned to the party who made them and "the Court shall determine what further orders should be entered in the main bankruptcy case and the [Turner Action]."  However, in such case, the remaining balance will be accelerated and will be immediately due with interest accruing thereon.

(2)  Until the $1.2 million is paid, no principal payments shall be made to any of the noteholders who have loaned money for use in Defendants' lending activities.

---

[5]  While the Court was advised by the parties that they had reached this resolution somewhat earlier, the Settlement Agreement was not fully executed until August 17, 2007.

[6]  Upon the Effective Date of the Plan, the Debtor is discharged, the property of the estate revests in Debtor and the merger of the Debtor into its affiliate occurs.

(3)  In return for the $1.2 million, the Defendants and all other Frascella- controlled entities and certain others will be released by the Class.

(4)  The Debtor and two related entities shall forgive and discharge any amounts owed by any member of the Class on any loan that was in default as of December 23, 2005.

The Approval Motion and Hearing

On September 24, 2007 Plaintiffs filed a Motion Seeking Preliminary Approval ("Approval Motion") of the Settlement Agreement accompanied by a proposed order of approval and a class notice.  Adv. Doc. No. 65.  Shortly thereafter Debtor filed an Amended Chapter 11 Plan and Amended Disclosure Statement setting forth, inter alia, the terms of the Settlement Agreement and providing for its implementation as part of the proposed plan. Doc. Nos. 277 and 278.

On November 5, 2007 the parties appeared in connection with the Approval Motion,[7] and explained to the Court what was envisioned at that point.  Pursuant to Fed.R.Civ. P. 23, I was requested to provide preliminary approval of the Settlement Agreement, i.e., to provisionally certify the class, the class representatives and their counsel for settlement purposes and preliminarily approve the Settlement Agreement as sufficient for transmission to the Class.  As part of that process, a date was requested for the fairness hearing at which the Court would finally determine whether the criteria for class certification were met and whether the Settlement Agreement was fair, and a schedule was proposed for notification

---

[7]  Also before the Court at that hearing was the Debtor's request for approval of its Amended Disclosure Statement.  Given the parties' agreement to continue to discuss the terms of the settlement with a view toward confirmation of a more feasible plan of reorganization, I held over the Amended Disclosure Statement for further hearing as it may be amended.

of the Class (through mailed notice and publication), the filing of a motion for final approval

of the Settlement Agreement and the filing of objections thereto.  While the Approval

Motion was styled as Plaintiffs' motion, the parties made clear at the hearing that it was a

mutual request that I confer preliminary approval of the Settlement Agreement and the

negotiated class notice.

While my response began by sincerely congratulating counsel on achieving the

settlement, I nonetheless noted that there were aspects of the settlement that I either did not

understand or that I found to be cumbersome as part of Chapter 11 reorganization plan.

Transcript of November 5, 2007 hearing (Tr.) at 6 ("I have a comfort level with it in terms

of...preliminary approval" but I have "concerns and questions").[8]  My primary focus was a

provision that upon payment default by the Brothers, the escrowed payments would be

returned to them, and the parties would return to their litigation positions.[9]  I expressed my

concern that this provision could be fatal to the confirmed plan which due to the deferral of

---

[8] Specifically I asked for "clarification" on the implementation of the settlement *vis a vis* the "Trigger Date" and "Effective Date" of the plan to which Debtor's counsel provided an explanation but then stated "if we need to amend anything or clarify that. . . ." Id. at 12.  I went on to state that I "have a conceptual problem with how you structured this as a Chapter 11, but I'm first trying to understand it . . . from the point of view of a class member who's going to get a notice that's going to say here is the settlement, but it may never happen."  I then suggested that "from point of view of debtor in possession and creditors, I think you are asking me to confirm a plan that's really illusory." Id. at 13.

[9] In connection with this Motion, I have more carefully studied the Settlement Agreement and determined that a payment default does not  render the Settlement Agreement null and void. On the contrary, the Settlement Agreement only provides that the payments would be returned, the obligations accelerated and I would determine what orders should be entered in the main bankruptcy case and Turner Action.  Settlement Agreement ¶17.

the effective date until all payments are made, might never be consummated. As I stated, "I'm trying to determine, Mr. Karalis, what I have by way of a confirmed plan." Id. at 14. While noting that "I don't want to be a fly in the ointment, id. at 17, I stated that "I'm trying to understand what happens if it [the settlement] unravels."[10]

To these concerns, Brothers' counsel Marc Zucker ("Zucker") opined that the money and the plan function as the "carrot and the stick." The Brothers' desire for the consummated reorganization would motivate them to make the payments. I still maintained that creditors would be hard pressed to vote for a plan "when they don't have the foggiest notion of whether it will ever go effective?" Id. at 21. In short, I expressed my discomfort with the payment timetable because of the resulting uncertainty to the reorganization. Id. at 27.

After hearing my questions and concerns, the parties agreed to return to the table to attempt to address these issues consistent with their overall agreement. Debtor's counsel said they "require us to sit down with Mr. Ackelsberg and try to see if there is some mechanism by which we can address the concerns you are raising."[11] After asking for

---

[10]  I questioned "Is there any reason why the whole legal process [final approval of the settlement] has to be in advance of the payment? In other words, why can't the plan process be deferred until the money comes in?" Id. at 15-16. I also questioned whether there was to be a judgment for $1,050,000 to execute on? Id. at 19.

[11]  Again my focus was on the integration of the settlement into the reorganization process: "if you approach it as the class action part of it, that's easier than when you try to wrap it into a Chapter 11 proceeding. And that's . . . where my sensibilities are." Id. at 34. I continued: "to the extent you want to re-look at the sequencing [of the payments] and it means deferring plan confirmation, I don't have any problem with that if the goal is get it on more certain footing for being confirmed." Apparently understanding my point, Debtor's counsel stated, "okay." Id. at 39.

a return court date, he concluded "[w]ell clearly, your Honor, we're going to need to obviously sit down and work through these issues." Id. at 51-52.

Brothers' counsel and David Frascella were present during this colloquy about the next step and did not demur.  Significantly, I concluded as follows:  "And I say, good work. I think we're going to get there and I think... sometimes more work in the beginning is helpful in the end to which Brothers' counsel replied, "Thank you for the benefit of your thoughts." Id. at 54.

Post-hearing Negotiations

Consistent with the parties' assurances to the Court as we adjourned on November 5 and as is apparent from the various written documents exchanged by the parties after the hearing, there was a significant effort "to sit down and work through" the issues I raised. An initial e-mail dated November 14, 2007 from Ackelsberg to Karalis and Zucker detailed Ackelsberg's view of the issues to be addressed and proposed modifications to the Settlement Agreement that accomplished that end in furtherance of a conference call scheduled for the next day.  Exhibit 1 to Affidavit of Irv Ackelsberg, Esquire ("Ackelsberg Aff.").  As of December 4, 2007, as reflected in a Karalis e-mail of that date, there were apparently drafts of a modified agreement prepared by both Ackelsberg and Zucker which were reviewed by Karalis against his hearing notes.  He then prepared his own version working off the original settlement agreement (as opposed to the Ackelsberg or Zucker drafts).  He stated:

> As you all know, we devoted much time and energy to achieve the settlement agreement that is on file with the Court.  I believe that my version addresses

the primary concerns raised by the Court. My version continues to utilize the original time frame contemplated under our original agreement.

However, it excludes some of the changes suggested by Irv which were not contained in the original agreement filed with the Court. Lastly, as suggested by the Court, it defers the approval process to a date after the Escrow Agent is in possession of the $1,050,000 that is being paid by Dave and Larry.

The e-mail speaks of another conference call to follow. Karalis' proposed Modified Agreement to Settle Class Adversary Proceeding was attached along with provisions to be incorporated into the final approval order. The transmission went to both Brothers and Zucker. Exhibit 2 to Ackelsberg Aff.

On December 10, 2008 Ackelsberg transmitted his revised version of the Karalis draft to Karalis and Zucker noting his belief that it responded to the Court's concerns while retaining the payment schedule and creating an enforcement mechanism that is not a money judgment but becomes one in the event of a failure to comply with the payment schedule. Exhibit 3 to Ackelsberg Aff. On December 11, 2008, Karalis responded with a copy to Zucker and the Brothers that he and Marc were reviewing his draft and had a few points of "clarification." He observed that "[o]verall, it seems we are close." Exhibit 4 to Ackelsberg Aff.[12] Indeed it appears that the lawyers had found a consensual solution to my principal concern, i.e., that the monetary settlement could be undone if Brothers' missed an installment or other payment,[13] by providing for a $1,050,000 judgment note to be

---

[12]  He not merely makes this statement but he focuses on the implementation of the modification asking Ackelsberg to address the changes to the notice and proposed order and to circulate same when and as soon as prepared. Id.

[13]  I was not concerned about the Debtor's payment obligation since I can require that to be escrowed as a condition of plan confirmation. Fed.R.Bankr.P. 3020.

paid in the same schedule as contemplated by the Settlement Agreement. Karalis' follow-up e-mail with a revised modification agreement (the "Karalis Modification") blacklined to Ackelsberg's last draft was transmitted to Ackelsberg on December 14, 2007 with copies to Zucker and Brothers along with a request that he call after he completed his review. Exhibit A-5 to Ackelsberg Aff.

On December 20, 2007 Ackelsberg transmitted to Karalis and Zucker what he "hoped to be a mutually acceptable revision" (the "Ackelsberg Modification"). He accepted the Karalis Modification but for four changes, one of which he characterized as substantive. The non-substantive changes dealt with the characterization of the loan debt being discharged to promote more favorable tax consequences to the Class; a clarification of the definition of Trigger Date; and a two-week acceleration of the Final Hearing date. The substantive change involved the original provision that the individual investors (i.e., the Noteholders) not be paid until after Class was. Karalis had changed that, and Ackelsberg changed it back. Exhibit A-6 to Ackelsberg Aff.

The Repudiation

On December 19, 2008, the Third Circuit Court of Appeals filed its opinion in Gay v. Creditinform, 511 F.23 369 (3d Cir. 2007), in which it affirmed the district court and held that an arbitration provision in certain consumer contracts for credit repair services was enforceable, rejecting the unconscionability defense to a motion to compel arbitration. On December 21, 2007 Zucker sent an e-mail (the "Repudiation Letter") to Ackelsberg with a copy to Karalis stating:

We are in receipt of your December 20 email, raising further substantive issues regarding any proposed settlement of this case. Given the failure of the parties to reach agreement, the Court's failure to approve the earlier agreement, which is now null and void, and the impact of the Third Circuit's decision in <u>Gay v. Creditinform</u>, all terms previously proposed are hereby withdrawn. Defendants need to give further thought to the terms upon which they would be willing to consider a settlement of this case.

Exhibit 7 to Ackelsberg Aff.

On January 22, 2008 a status hearing (the "Status Hearing") was held in which I was advised of the Defendants' position as expressed in the Repudiation Letter and the Plaintiffs' intention to seek enforcement of the settlement. A schedule for submissions was established, and all evidentiary material and briefs (including an unanticipated but permitted sur-reply filed by Defendants) were filed by March 28, 2008. Following my review of all these materials, I scheduled a further status hearing because, <u>inter alia</u>, I found that there may be relevant and material facts in dispute, and I wanted to verify that Plaintiffs, as their briefs stated, did not wish to present any further evidence. When I was assured that was their decision, I requested a further briefing on the defense of lack of settlement authority raised by Defendants in their Reply Brief to which the Plaintiffs had not responded. That brief and the Defendants' sur-reply have now been filed, and the contested matter is ripe for decision.

## DISCUSSION

### A.  Introduction

The Plaintiffs seek an Order of this Court enforcing the Settlement Agreement as modified by the Ackelsberg Modification, contending that an agreement on all material

terms of the settlement was reached and the parties intended that the agreement be final

and binding.[14]  In defense, the Defendants claim there is no extant agreement since (1) the

original Settlement Agreement is null and void by reason of the Court's failure to approve

it; (2) the Ackelsberg Modification does not represent a meeting of the minds since there

were material terms not agreed to and/or missing; (3) even if its material terms were agreed

to, the Ackelsberg Modification is not enforceable because it has not been executed by the

parties nor have the Brothers consented to the new terms; and (4) even if its material terms

were agreed to, the Ackelsberg Modification is not enforceable because it is not a simple

contract but a class action, the settlement of which requires many steps not yet addressed.

Defendants Memorandum in Opposition to Motion ("Def. Mem.").

       In addition to the documentary exhibits referenced above, Ackelsberg and Karalis

filed Affidavits which verify the documentary evidence (along with their respective

"spins" on its meaning) and David Frascella ("David") filed an Affidavit ("Frascella Aff.")

in support of Defendants' contention that his counsel had no authority to bind him and his

brother to an unsigned or oral agreement.  Exhibit "B" to Def. Mem.  According to David,

after reviewing the Gay opinion, they concluded that they "could not in good conscience

justify a continued negotiation of settlement on the terms that we had been discussing."

Frascella Aff. ¶7.  Not unexpectedly, he states that they would not sign off on either of the

---

[14]  Defendants argue that Plaintiffs only seek enforcement of the Settlement Agreement as modified as though there are two separate agreements at issue.  To the extent the Motion could be construed in that manner, and I do not, Plaintiffs' brief makes clear that while it is their desire to enforce the Settlement Agreement along with the subsequently negotiated modifications, they have not abandoned the Settlement Agreement and seek its enforcement.

circulated drafts today nor would they agree to the Settlement Agreement which they

view as "null and void" because the Court declined to approve it at the November 7 hearing.

Id. ¶¶ 6, 8.

## B.  Applicable Legal Principles

1. <u>Procedure</u>.  The parties agree on the applicable legal principles which will be stated

as a context for this decision.  First, the Court's role in deciding a motion to enforce a

settlement agreement closely resembles a motion for summary judgment and uses a similar

review process.  <u>Tiernan v. Devoe,</u> 923 F.2d 1024 (3d Cir. 1991).[15]  When relief depends on

a factual issue and credibility determinations are required, however, a hearing should be held.

<u>Garabedian v. Allstates Engineering Co.</u>, 811 F.2d 802, 803 (3d Cir. 1987).

2. <u>Substantive Law</u>.[16]

Quoting from Defendants' Memorandum, Plaintiffs agree that where the existence of

a settlement agreement is disputed, ordinary principles of contract law are applied to resolve

---

[15]  The Circuit explained:

> This central issue-whether there was any disputed issue of material fact as to the
> validity of the settlement agreements-is similar to that which any court must address
> when ruling on a motion for summary judgment.  <u>See</u> Fed.R.Civ.P. 56(c).  This is not
> mere coincidence.  The stakes in summary enforcement of a settlement agreement
> and summary judgment on the merits of a claim are roughly the same-both deprive
> a party of his right to be heard in the litigation.

Id. at 1031.

[16]  Defendants curiously present a long exposition on choice of law principles, reiterating
their position in the underlying litigation that Delaware law applies, and then conclude that since
Delaware and Pennsylvania are the same for these purposes, it does not matter.  They then proceed
to cite to cases under Pennsylvania law which Plaintiffs contend is controlling. I have been mindful
of this issue as I made my way through the various legal questions presented and have concluded
that choice of law is not dispositive of the outcome of this Motion.  <u>See</u> n. 18 <u>infra.</u>

the matter.  In re Cendant Corp. Prides Litigation, 233 F.3d 188, 193 (3d Cir. 2000).

Plaintiffs, as the party seeking enforcement, have the burden of establishing that an

agreement has been formed containing terms sufficiently definite to be enforced and that both

parties have manifested an intention to be bound by them.  Channel Home Centers v.

Grossman, 795 F.2d 291, 298-99 (3d Cir. 1986).  When these elements have been found,

enforcement will be ordered even where the agreement is not memorialized in writing.

Green v. John H. Lewis & Co., 436 F.2d 389, 390 (3d Cir. 1970).

This court is mindful that amicable settlement of disputes is favored over litigation

and its concomitant burden on the courts.  Standard Steel, LLC v. Buckeye Energy, Inc.,

2005 WL 2403636, *8 (W.D. Pa. Sept. 29, 2005).  In so noting, I also observe that this

policy does not encourage premature enforcement of settlements that are not yet complete.

United Mine Workers of America v. Barnes & Tucker Co., 561 F.2d 1093, 1099

(3d Cir. 1977).

### C.  Conclusions

1. *The Modification Negotiations Have Not Been Memorialized in a Binding Written
Agreement*.  While disputing that there was a meeting of the minds regarding the material

terms of a modification,[17] the Defendants also argue that even that which appears to have

been agreed to, was not because Karalis was not authorized on behalf of the Brothers to enter

---

[17] Because I am unable to enforce the modification for other reasons, I need not reconcile
Karalis' pre- Gay statement that "overall it seems we are close" with the Defendants' position as
expressed in their brief that there were "many open terms" so as to negate any meeting of the minds.

the agreement he proposed.[18]   Rather the Brothers aver that they expected to have the

opportunity to review a final written agreement and execute it before they would be bound.

An attorney has no authority to settle his client's case solely by reason of his general

power to handle the case.  Garabedian, 811 F.2d at 803.  A binding agreement can only be

formed if the client authorizes the compromise.  Id.  Such authorization must be express to

enable an attorney to compromise rights or impose new liabilities or burdens on the client.

Reutzel v. Douglas, 582 Pa. 149, 154, 870 A.2d 787, 789-90 (2005) ("The law in this

jurisdiction is clear and well-settled that an attorney must have express authority in order to

bind a client to a settlement agreement.").  See also Covington v. Continental General Tire

Co., 381 F.3d 216, 218-19 (3d Cir. 2004).[19]

---

[18]   Although the opposition pleadings have been filed jointly by Debtor's and Brothers' counsel, there does not appear to be any independent reason why the Debtor would oppose a settlement that would pave the way for its emergence from bankruptcy.

[19]  In Covington, the Third Circuit Court of Appeals, construing Pennsylvania law, read prior decisions of the Pennsylvania Supreme Court to leave open the possibility that apparent authority may, in appropriate circumstances, become the basis of enforcing a settlement where the conduct of the principal warrants that result.  Id. at 219-20.  It stated, however, that  apparent authority will only be created when the principal has made representations concerning the agent's authority to a third party.  Id. at 220.  However, in Reutzel the majority reaffirmed that express authority was the rule in Pennsylvania and rejected the Third Circuit's understanding of its case law to suggest otherwise.  582 Pa. at 157, 870 A.2d at 791.

Similarly, the Delaware courts reject implied or apparent authority of an attorney  to bind his client.  Corbesco, Inc. v. Intern. Union of Operating Engineers Local No. 542, 620 F.Supp. 1239, 1243 (D. Del. 1985) ("An attorney . . . does not have implied or apparent authority to compromise an action solely on the basis of being retained as counsel in the matter") (citing Aiken v. National Fire Safety Counsellors, 36 Del. Ch. 136, 139, 127 A.2d 473, 475 (1956)); Joyner v. News Journal, 1996 WL 659005, at *4-5 (Del. Super. 1996) ("Where an attorney consents to settlement of his client's cause without the actual consent of the client, the settlement will not be binding on the client").

I thus turn to the record which Plaintiffs contend evidences the existence of such authority.  Following the November hearing at which David was present, the Brothers authorized counsel to conduct further negotiations on the points addressed by the modification draft.  Frascella Aff. ¶ 6.  They were copied on every draft their counsel transmitted to Plaintiffs, Exhibits 2, 4, and 5 to Ackelsberg Aff., and were therefore aware of Karalis' statement that he and Zucker were reviewing Ackelsberg's draft and "we are close."  Exhibit 4 to Ackelsberg Aff.  Moreover, Karalis had advised Ackelsberg that the Frascellas might be willing to agree to the entry of a judgment upon non-payment as they requested, which "clearly stat[ed] his intention to seek their authorization to make such a supplemental agreement."  Plaintiff's Supp. Mem. at 5.  The subsequent inclusion of that term in the Karalis Modification leads Plaintiffs to conclude that approval of that term was sought and obtained.  Id. at 6.

In response, Defendants have proffered the Frascella Affidavit in which David states:

> We were never asked for, and never gave authority to counsel to bind us to any unsigned agreement.  To the contrary, our understanding at all times was that we would have a final opportunity to review with care any and all written terms of a formal written agreement negotiated by counsel and either reject those terms or accept them and sign the final agreement.

Frascella Aff. at ¶3.

Both parties recognize that I am to approach this Motion using summary judgment procedure, and if there is any question concerning counsel's authorization, I am required to hold an evidentiary hearing.  Garabedian, 811 F.2d at 803-804; Suber v. Peterson, 2006

WL 1582312 (E.D. Pa. 2006); Patton v. Simone, 1993 WL 485897, at *11 (Del. Super.

Sep 22, 1993). Although there is a presumption that a settlement entered into by an attorney

has been authorized, the presumption is rebuttable. Id. The Frascella Affidavit demonstrates

the existence of a material fact, i.e., whether the Brothers had expressly authorized counsel to

settle on the terms of the Karalis Modification. Even assuming the facts recited by Plaintiffs

were sufficient to find implied authority,[20] that theory has been expressly disavowed by the

Pennsylvania Supreme Court in Reutzel.

Plaintiffs demand a hearing in the event that I do not find their implied authority

thesis dispositive. Defendants point out that Plaintiffs' present request is inconsistent with

their prior statements that a hearing was not necessary[21] but do not state that one is not

appropriate.[22] Defendants contend that David's sworn statement that he and his brother

---

[20] The cases cited by Plaintiffs are premised on that principle. See Plaintiffs' Supp Mem. at 6 n.2. Prior to Reutzel, even where the theory of implied apparent authority was accepted, it required evidence of the principal's (not counsel's) direct communications to the other party's counsel which would lead him to believe that counsel had the authority to settle. Thus, there was no implied authority found from the attendance of the principal in the courtroom when a settlement was announced, Farris v. J.C. Penney, 176 F.3d 706 (3d Cir. 1999), or because the attorney had transmitted all communications and attended a pretrial conference where client authority was required by the court. Edwards v. Born, Inc., 792 F.2d 387 (3d Cir. 1986). There is no evidence in this record of communications by the Frascellas to Plaintiff's counsel; rather the facts as relied upon by Plaintiffs are actions of Debtor's counsel (and not even Brothers' counsel).

[21] I do not find that to be the case. Plaintiffs apparently believed that they could make their case on the record submitted. They have failed to do. When a summary judgment motion is denied, the case is tried.

[22] Rather than reject the requirement of a hearing, Defendants reiterate, without any authority, their position that "any evidentiary hearing must be held before an arbitrator in accordance with the parties' multiple arbitration agreements. Assuming that there are such agreements, a fact that Plaintiffs dispute, their existence does not deprive this Court of jurisdiction to adjudicate
(continued...)

"were never asked for, and never gave, authority to counsel to bind us to any unsigned agreement" constitutes evidence sufficient to raise an issue of fact under the summary judgment standard applicable here.  Def. Supp. Mem at 2.  I agree.

However, while I concur that there is a disputed issue of material fact on the issue of counsel's authority, my reasoning differs from the arguments advanced by the parties. In direct counterpoint to David's sworn statement that counsel was not authorized to agree to a settlement and that the Brothers expected to review and sign a final agreement before it would become binding, is the term of the Settlement Agreement that establishes the required process for modifying the Settlement Agreement.  Paragraph 32 states, in pertinent part,

> This Agreement shall not be modified in any respect except by a writing executed by counsel for all Parties and approved by the Bankruptcy Court.

Settlement Agreement ¶ 32.  Thus, the Brothers have agreed that the Settlement Agreement

---

(...continued)

this Motion.  In <u>United Mine Workers v. Barnes & Tucker Co.</u>, 561 F.2d 1093 (3d Cir. 1977), the Third Circuit Court of Appeals considered whether judicial enforcement should be accorded the resolution of a grievance achieved by settlement versus arbitration.  While arising in a different context than the matter before me, the Court's rationale for its affirmative ruling is instructive here:

> It is not arbitration per se that federal policy favors, but rather final adjustment of differences by a means selected by the parties.  If the parties agree that a procedure other than arbitration shall provide a conclusive resolution of their differences, federal labor policy encourages that procedure no less than arbitration. A determination made pursuant to that chosen procedure is no less enforceable in a federal court than is an arbitration award.

<u>Id.</u> at 1096.  Defendants submitted themselves to the jurisdiction of this Court for the purpose of seeking approval of a settlement of the Turner Action.  They cannot selectively withdraw that consent to obstruct enforcement of the agreement by the Court to which they submitted themselves.

-18-

may be modified by a writing signed by <u>counsel</u>; their agreement appears to contradict the Frascella Affidavit's averment that they were to review any modification and sign off. Indeed if there were such a modification executed by counsel for all parties, Paragraph 32 might foreclose the argument that they now make.  Given that the Brothers by their own admission authorized counsel to negotiate the modification and given that they had not retained any right to execution, the evidence would have to be compelling that Brothers had told counsel that they could not execute any modification until they expressly authorized them to do so.  If the question of client authorization was dispositive of my conclusion herein, I would schedule an evidentiary hearing on client authorization as the parties appear to concede is required when there are material disputed issues of fact.

However, there is another impediment to enforceability of the modification apparent from the contractual language quoted above which does not require further evidence to resolve.  All of the terms of the Settlement Agreement, which I have now held is enforceable, must be given effect.  It is clear that the parties agreed that modification to the Settlement Agreement "in any respect" must be "in a writing executed by counsel for all Parties."

Plaintiffs have referenced the well established principal that an agreement to settle a lawsuit is binding on the parties in the absence of a writing.  <u>Green v. Lewis</u>, 436 F.2d 389, 390 (3d Cir. 1970).  On that authority, they contend that the Karalis Modification as accepted in all material respects by the Ackelsberg Modification is an agreement that represents a meeting of minds creating a contract without a final formal document signed by the parties. In so stating, they fail to recognize that the absence of an executed modification is fatal

where the parties clearly show that the signing of a document is a condition precedent to the legal obligation. Franklin Interiors v. Wall of Fame Management Co., Inc., 510 Pa. 597, 600 (1986) (language stating that document does not become a contract until approved by officer so as to unambiguously require   execution as a condition precedent to enforcement). See also Smith v. Onyx Oil and Chemical Co., 218 Fed.2d 104, 108 (3d Cir. 1955) (New York law); Annand v. Brookmeade, Inc., 1979 WL 4640, at *4 (Del Ch. 1979) (relying on Smith).   The question is one of intent which in this case I must glean from the parties' writings which expressly require an agreement executed by counsel for all Parties. Even if the e-mail sent by Karalis and bearing his name at the bottom could be viewed as an electronic signature for these purposes,[23] an assertion not made by Plaintiffs, there is no responsive signature by Zucker whose participation in the negotiated document exchange was not active until the Repudiation Letter was sent.   Moreover and significantly, Ackelsberg's response to the Karalis e-mail was to proffer additional changes to the Karalis Modification.  From this I can only conclude that he was not prepared to and did not sign off on the same final agreement.  As neither the Karalis or the Ackelsberg Modifications can be construed as the modification document required by the Settlement Agreement, Defendants cannot be bound to its terms.

    2.   *The Settlement Agreement Is An Enforceable Contract between Plaintiffs and Defendants.*  While negotiation of modifications to the Settlement Agreement may

---

[23]   Both federal and state law recognize the "electronic signature," defining it as" [a]n electronic sound, symbol or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record."  15 U.S.C. § 7006(5) (federal Electronic Signatures in Global and National Commerce Act); 73 P.S. § 2260.103 (Pennsylvania's Electronic Transactions Act); 6 Del.C. § 12A-102 (Delaware's Uniform Electronic Transactions Act).

not have been formalized to allow their enforcement, the parties' written and executed

Settlement Agreement is a valid and enforceable contract.  It is clear that when both parties

sought preliminary court approval to commence the class action procedure on November 7,

2007, they considered themselves to be bound.  The Defendants admitted as much in their

brief as did David Frascella in his Affidavit.  Def. Mem. at 1 ("Plaintiffs make much of the

fact that defendants signed a settlement agreement in August 2007 and agreed to be bound

by its terms, and indeed there is no dispute as to this point."); Frascella Aff. ¶ 5 ("Ultimately

in September 2007, we reviewed. approved and signed an agreement intending to be

bound by its terms if the Court had approved it.").  The Debtor filed an Amended Plan and

Disclosure Statement incorporating the Settlement Agreement and requested I approve

the Disclosure Statement as containing adequate information to allow all creditors to vote

on the Chapter 11 plan.

What could have transpired since that date to support the Defendants' contrary view

or is it simply, as Plaintiffs aver, a case of buyer's remorse motivated by the Third Circuit's

decision in Gay?  First, Defendants contend that the Settlement Agreement is presently

"null and void" due to my failure to approve it at the preliminary approval hearing on

November 7.  That argument is belied by the colloquy that ensued at the hearing which

I have quoted with considerable detail.  Their statement that I have "rejected" the agreement

is contradicted by my statement that I found the terms fair and reasonable.  My concerns,

as evidenced by the quoted transcript portions, went to the Chapter 11 proceeding and the

consummation of a confirmed plan of reorganization that could be unwound by a condition

that was within the plan proponents' control.  The U.S. trustee joined in that assessment.

It was clear that I never disapproved the Settlement Agreement and indeed the requested

approval of the Court at that hearing was intended to only be preliminary so as to trigger the

class settlement process.  My invitation to the parties to continue their discussions to address

this and other issues that needed some clarification was not only accepted but welcomed.

Thereafter, and until the release of the Gay decision, they acted in furtherance of their

settlement.  The notion that Defendants could renege on the Settlement Agreement, which

has all the attributes of a valid contract executed by the parties, is unsupported by the

record and the law.

In a colloquy with Brothers' counsel at the Status Hearing, I advised him that I did

not accept the Defendants' argument that the Settlement Agreement was rendered null

and void by my failure to enter a preliminary approval order at the November hearing.

Plaintiffs, on the other hand, more accurately describe what transpired as a "suspension" of

my decision on the motion for preliminary approval until the parties had an opportunity to

meet and see if they could remedy the flaws I perceived in the agreement, the class notice

and the proposed order.  As Defendants said they would try to do so, I never had to decide

whether preliminary approval would be granted to the Settlement Agreement in its present

form.[24]  My comments about the settlement, as the transcript clearly reflects, as well as the

---

[24] Moreover Defendants are simply wrong when they claim that my comments concerning
the flaws in their settlement preclude enforcement now.  Def. Supp. Mem at 5-6.  Notably this was
a motion for preliminary approval of a class action under Fed. R.Civ.P. 23, not approval of a
(continued...)

deference a court gives to a highly negotiated agreement are counterintuitive to a suggestion that I would summarily foreclose class relief.

I also reject Brothers' alternative argument that they were free to unilaterally and without cause reject the Settlement Agreement.   While pressed at the April hearing to articulate his basis for the position that the agreement was null and void, other than allegedly made so by me, Zucker was unable to point to any provision of the Settlement Agreement that supports their view.   The recently filed sur-reply memorandum, while reiterating that the Settlement Agreement was rendered null and void in accordance with its own terms when it was not preliminarily approved by the Court, still fails to explain a basis for so contending.[25]   The absence of support for this position can only be attributed to the fact that the Settlement Agreement provides otherwise.   Paragraph 28 contains the parties' agreement on this point.   It states:

> Unless otherwise agreed by the parties, this Agreement shall be null and void
> if not finally approved by the Bankruptcy Court or affirmed on appeal....

Since the null and void provision is triggered by my refusal to grant **final** approval to the Settlement Agreement and it is clear that the process was still moving forward after the

_____

(...continued)
compromise under Fed. R.Bankr.P. 9019.  While the Settlement Agreement may not garner ultimate final approval for any number of reasons, including rejection by the Class, such possibility does not release Defendants from the obligation they freely assumed.  See Ramirez v. DeCoster, 142 F.Supp. 2d 104 (D. Me. 2006), infra.

[25] Alternatively,  Defendants refer to Zucker's letter declaring the agreement null and void but still not explaining his power to do so.  Def. Supp. Mem. at 5.

November 7 hearing, the Defendants' argument is simply disingenuous. Even the provision that allows a return of all settlement payments if there is a default in the Brothers' payment obligations or if the plan does not become effective due to the Debtor's failure to make its payments, does not render the Settlement Agreement null and void.

Moreover, it makes no sense that the costly and time consuming class approval process could be initiated and the Defendants could pull out at any time for no reason. Plaintiffs cite two cases that bring this point home. In <u>Allen v. Alabama State Board of Education</u>, 612 F. Supp.1046 (M.D. Ala. 1986),[26] the defendants repudiated a written class settlement agreement contending that the absence of Rule 23 approval meant the agreement was not yet binding. While recognizing the procedural steps to final approval had yet to occur (preliminary approval, class notice and fairness hearing), the court nonetheless concluded that before embarking on that "expensive and time-consuming" process, "[i]t is essential that ... the court and the parties have some assurance that the settlement is binding on the names parties. <u>Id.</u> at 1054. Even closer to the facts *sub judice*, <u>Ramirez v. DeCoster</u>, 142 F.Supp. 2d 104 (D. Me. 2006) involved a mediated class settlement which, during continuing negotiations of the formal written settlement agreement, was abandoned by the defendants when some favorable court rulings made them rethink their willingness to settle. The court, applying basic contract principles, found that all material terms had been agreed to and the  negotiation over the document was "a scrivening exercise, with good faith

---

[26] This order was vacated by the district court on reconsideration, 636 F.Supp. 64 (M.D. Ala. 1986) but the circuit court reversed and reinstated the original order enforcing the agreement. 816 F.2d 575 (11th Cir. 1987).

obligations attached." Id. at 114.   While it observed that the settlement might not ultimately succeed based on Rule 23 class action requirements still to be met, the agreement was nonetheless contractually enforceable.  Id. at 116.  See also Main Line Theatres v. Paramount Film Distributing Corp., 298 F.2d 801, 804 (3d Cir. 1962) (neither party was free to repudiate the agreement during the period required to accomplish a condition of the settlement); McClure v. Township of Exeter, 2006 WL 2794172, at *3 (E.D. Pa. Sep. 26, 2006) (contract is enforceable conditioned on the implied condition precedent- formal ratification by the Township and is not subject to unilateral recision pending that event).

In short, until the Third Circuit rendered the Gay decision to which I am bound and the Brothers viewed their prospects of defeating the Turner Action on procedural grounds to be enhanced, Defendants acted in furtherance of their Settlement Agreement.  Obviously a favorable change in the law does not afford a settling party a chance to repudiate an otherwise valid settlement to which it is contractually bound.  Coltec Indus. Inc. v. Hobgood, 280 F.3d 252, 273 (3d Cir, 2002).  The Zucker e-mail, Exhibit 7 to Ackelsberg Aff., withdrawing "all terms previously proposed" had no legal impact on Defendants' obligatory performance of the terms and conditions of the Settlement Agreement, which will be enforced.

While the Defendants contend that many terms remained for negotiation, the issues they list clearly are referring to the modification.  Def. Mem at 14-18.  Nor does the Supplemental Memorandum Regarding Issue of Actual Authority during which they took the opportunity to respond to my bench view that the Settlement Agreement was enforceable state otherwise.  Indeed I find that the only impact of the deferral of

the approval process is the actual timetable which will now differ from that originally proposed to the Court. The Trigger Date is defined in the Settlement Agreement to be fixed by certain events, not a date certain. Indeed there is no drop dead date in the Settlement Agreement for anything to happen.[27] Thus, there is no alteration of the contractual meeting of the minds on this issue. While the parties may have agreed to an implementation schedule which they proposed to the Court, the Court, not they, is to determine the actual dates. Moreover while the parties may have agreed to a form of class notice and order, the Court, not they, is to determine the contents of those documents as well. It is true that the Court will give deference to the parties' proposals for a timetable but in the event no consensus is reached, the Settlement Agreement and notions of due process will inform my decision.

In short, my critique of the terms of the Settlement Agreement and demand for clarity in the notice and proposed order do not give the Defendants a license to repudiate their agreement. The only impediment to enforcement of the Settlement Agreement will be if it is not acceptable to the Class and/or the Amended Plan is not confirmed. Towards that end, it is time to test it at a rescheduled hearing on the Approval Motion. While I still believe this to be an imperfect agreement and find the improvements negotiated by counsel would have been beneficial to all parties, it is better than no agreement and returning to the litigation as Defendants urge. While I can appreciate that the Brothers want to relieve themselves of or renegotiate the monetary commitment of $1,200,000 to satisfy the Class claims, I find that there is no basis in law to permit them to do so.

---

[27] The dates are "the later of..." See ¶¶ 14, 15 of Settlement Agreement, Exhibit 5 to Karalis Aff.

<u>Adversary No. 06-0101</u>

## CONCLUSION

For the foregoing reasons, I find that the Settlement Agreement is a binding and enforceable agreement but the modifications negotiated after the November hearing are not. A rescheduled hearing will be held on the Motion for Preliminary Approval of the Settlement Agreement. Pending that hearing, the parties will meet and prepare a revised class notice and Rule 23 schedule and proposed order consistent with the colloquy at the November hearing. A rescheduled hearing shall also be contemporaneously held for approval of the Amended Disclosure Statement in support of Debtor's Chapter 11 plan of reorganization. An Order consistent with the foregoing will be entered.

_____
DIANE WEISS SIGMUND
United States Bankruptcy Judge

Dated: May 8, 2008

# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| FRASCELLA ENTERPRISES, INC., | : | Bankruptcy No. 06-10322DWS |
| d/b/a CashToday, | : | |
| | : | |
| Debtor. | : | |

| | | |
|---|---|---|
| | : | |
| LAWRENCE TURNER, | : | Adversary No. 06-0101 |
| LINDA DAVIS and DEMRYI HILL, | : | |
| on behalf of themselves and all others | : | |
| similarly situated, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| FRASCELLA ENTERPRISES, INC., | : | |
| d/b/a CashToday, | : | |
| LARRY D. FRASCELLA, | : | |
| DAVID W. FRASCELLA, JR., and | : | |
| THERESA FRASCELLA, | : | |
| | : | |
| Defendants. | : | |

# ORDER

**AND NOW**, this 8th day of May 2008, upon consideration of the Plaintiffs' Motion

to Enforce Settlement (the "Motion"), after notice and based on the facts contained in the

record of this Court's proceedings and in certain documents that comprise the evidentiary

record, and for the reasons stated in the accompanying Opinion, the Court finding that the

Agreement to Settle Class Adversary Proceeding dated August 17, 2007 (the "Settlement

Agreement") is an enforceable contract;

It is hereby **ORDERED** that the Motion is **GRANTED** for the enforcement of the

Settlement Agreement;

**And** in furtherance thereof, it is **ORDERED** that a rescheduled hearing will be held

on the Motion for Preliminary Approval of the Settlement Agreement on **June 10, 2008 at

11:00 a.m.** in the Robert N.C. Nix, Sr. Federal Courthouse, 2nd floor, 900 Market Street,

Courtroom #3, Philadelphia, PA;

It is further **ORDERED** that a rescheduled hearing shall be contemporaneously

held for approval of the Amended Disclosure Statement in Respect of Plan of Reorganization

dated October 5, 2007.[1]

_____
DIANE WEISS SIGMUND
United States Bankruptcy Judge

---

[1] Should any further amendment to the Amended Disclosure Statement be required, it should be filed and served at least one week prior to the hearing, i.e., **June 3, 2008.**